UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ESTHER BECKMAN,

                Plaintiff,

              - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-1492 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Esther Beckman brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), seeking judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for Disability Insurance Benefits ("DIB") on March 8, 2021. The parties have cross-moved for judgment on the pleadings. For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

**I.    Plaintiff's Medical History and Physical Capabilities**

Plaintiff has been diagnosed with insulin dependent diabetes, lower extremity myopathy, cardiovascular disease, anxiety, and depression. (Administrative Transcript ("Tr."[1]) 14, 17–20, 170.) Due to these conditions, and their accompanying symptoms, Plaintiff reports difficulty dressing, bathing, shaving her legs, and using the bathroom. (Tr. 179–80.) Plaintiff cooks some

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript, not the internal pagination of the constituent documents.

meals when "up to cooking," but her "husband prepares most meals for [her]." (Tr. 180.) Similarly, she occasionally "will put laundry in the washer," but her "husband does most everything" around the house because she "physically cannot do" house and yard work. (Tr. 180–81.) Plaintiff only "infrequently" leaves the house alone, and when she does, it is to go to doctors' appointments or to sit on her patio. (Tr. 181.) Additionally, since the onset of symptoms, Plaintiff cannot sit comfortably in one place for too long, can only stand and walk for short periods of time, can only climb stairs with great difficulty, cannot kneel or squat, and has blurry vision. (Tr. 182–83.) At the administrative hearing on September 1, 2020, Plaintiff testified that due to her diabetes, she could, at most, lift 5 to 10 pounds. (Tr. 41–42.) Additionally, Plaintiff testified that she could walk only 10 to 15 minutes at a time. (Tr. 42.)

## II.     Procedural Background

### A.     The Five-Step Inquiry

In evaluating disability claims, an ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.*

If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the impairment is not severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii).

But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals

one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1. If the ALJ determines at step three that the plaintiff has an impairment that meets or medically equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii).

If the plaintiff's impairment does not meet or medically equal a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1). The ALJ then uses the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.*

Otherwise, the ALJ proceeds to step five and determines whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform any other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

**B.     The ALJ's Findings**

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since December 29, 2018, the alleged onset date." (Tr. 13.) At step two, the ALJ determined that Plaintiff had the "following severe impairments: diabetes mellitus with neuropathy; coronary artery disease; obstructive sleep apnea; and obesity." (Tr. 13.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (Tr. 15.) The ALJ then determined Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; sit for 6 hours and stand and/or walk in

3

>combination for 2 hours in an 8-hour workday. In addition, the claimant can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. Furthermore, the claimant should avoid unprotected heights and moving mechanical parts, and should avoid up to moderate exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.

(Tr. 16.) The ALJ made the above findings by relying primarily on the opinions and records of (1) Dr. Gould, Plaintiff's treating cardiologist, (2) Dr. Pollack, a consultative examiner, (3) C. Levit, M.D. and K. Ahmed, M.D., two non-examining state agency medical consultants, and (4) Dr. Dhiman, a non-examining expert. (Tr. 18–20.) The ALJ found that Dr. Dhiman's opinion that Plaintiff "could lift and carry 10 pounds frequently and up to 20 pounds occasionally, sit for six hours in a workday, and stand and walk for one hour each (two hours in total) per eight-hour workday" to be "most persuasive in light of [Dr. Dhiman's] medical qualifications and the rationale he provided with citations to specific evidence of record in support of his opinion." (Tr. 20–21.) The ALJ found "Dr. Gould's assessment of a less than sedentary capacity . . . less persuasive since it is inconsistent with the most recent normal stress test and the doctor's own treatment notes reporting the claimant to be doing fairly well with no difficulty standing or walking." (Tr. 20–21.) The ALJ found Dr. Pollack's "consultative evaluation somewhat persuasive because while some exertional restrictions are consistent with the clinical observations from this single exam, the marked limitations proposed are not entirely consistent with the benign neurological findings at this time." (Tr. 20–21.) The ALJ found "generally persuasive" the opinions of Dr. Levit and Dr. Ahmed, which concluded that Plaintiff "was capable of light exertion with environmental restrictions to work." (Tr. 20–21.) Furthermore, the ALJ found Dr. Levit's and Dr. Ahmed's opinions to be "consistent with the objective medical evidence . . . [and] supported by the compelling testimony of [Dr. Dhiman,] who similarly proposed a light exertional capacity." (Tr. 20–21.) The ALJ also disregarded Plaintiff's testimony at the hearing about her

4

physical limitations, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (Tr. 22.) At step four, the ALJ concluded Plaintiff was "capable of performing past relevant work as a Medical Secretary . . . as generally performed in the national economy." (Tr. 23.) The ALJ thus concluded Plaintiff was not disabled. (Tr. 23–24.)

## STANDARD OF REVIEW

Unsuccessful claimants for DIB under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

**DISCUSSION**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards. (Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mot."), Dkt. 12, at 8.) The Court grants Plaintiff's motion and remands the case to the SSA for the ALJ to develop the record and provide a RFC supported by substantial evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) ("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale."). Additionally, on remand, the ALJ should further explain his credibility determinations, including his reliance on evidence of daily functioning and extent of hospitalization. *Hodge v. Comm'r of Soc. Sec.*, No. 20-CV-769 (AMD), 2020 WL 7262846, at *4 (E.D.N.Y. Dec. 10, 2020) ("On remand, the ALJ should also include a specific credibility determination, explain how she balanced the various factors, and identify any inconsistencies between the plaintiff's testimony and the rest of the record.").

**I.   The ALJ Failed to Adequately Develop the Administrative Record**

  **A.   Duty to Develop the Record**

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015). It is well-established in the Second Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal

6

quotation marks omitted). This obligation exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Furthermore, even though Plaintiff did not expressly raise the issue, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

### B. The ALJ Failed to Resolve Inconsistencies in the Record

The ALJ noted inconsistencies between the opinions of Dr. Gould and Dr. Pollack and their respective medical reports, but failed to resolve them in developing the record. With respect to Plaintiff's physical limitations, the ALJ considered the opinions of (1) Dr. Gould, Plaintiff's treating cardiologist, (2) Dr. Pollack, a consultative examiner, (3) C. Levit, M.D. and K. Ahmed, M.D., two non-examining state agency medical consultants, and (4) Dr. Dhiman, a non-examining expert. (Tr. 18–20.) The ALJ found Dr. Dhiman's non-examining opinion "most persuasive," and the two non-examining state agency medical consultants' opinions "persuasive." (Tr. 21.) At the same time, the ALJ found Dr. Gould's opinion as a treating physician to be "not persuasive," and Dr. Pollack's opinion, another examining physician, only "somewhat persuasive" due to inconsistencies between the physicians' notes and their respective opinions. (Tr. 21.)

While there is no affirmative duty to resolve *all* inconsistencies in the record, the ALJ has an affirmative duty to develop the record, which includes re-contacting a treating physician if there exist "obvious gaps" in the record. *See Rusin v. Berryhill*, 726 Fed. App'x 837, 840–41 (2d Cir. 2018) (summary order) ("[T]he ALJ was under no obligation to recontact [the plaintiff's treating physician] where there were no obvious gaps in the administrative record and the ALJ possessed [the plaintiff's] complete medical history."); *Micheli v. Astrue*, 501 F. App'x 26, 29–30 (2d Cir.

7

2012) (summary order); *Rosa v. Callahan*, 168 F.3d 72, 79–80, 82–83 (2d Cir. 1999). Though the most obvious gaps in a record typically are akin to missing medical evidence, inconsistencies or vague opinions can also create a duty to further develop the record. *Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459 (PKC), 2021 WL 4480656, at *6–8, 10 (E.D.N.Y. Sept. 30, 2021) (remanding because of the ALJ's determination that a consultative examiner's opinion was "vague"); *Lee v. Saul*, No. 19-CV-9451 (CS) (JCM), 2020 WL 5362619, at *14 (S.D.N.Y. Sept. 8, 2020) ("Although [the treating physician's] assessments setting forth [the plaintiff's] functioning levels were brief, and arguably vague, the appropriate solution was not to reject the opinions contained therein on that basis, but rather to recontact [the treating physician] in an effort to have him clarify any ambiguities.").

The ALJ's evaluation of the medical opinions that were before him suggests a need to further develop the record and resolve the gaps created by the inconsistent medical opinions.[2] The record contains a report from Dr. Gould, Plaintiff's treating cardiologist, assessing Plaintiff's ability to do work-related activities. (Tr. 506.) The ALJ summarized the report as follows:

> Dr. Gould opines the claimant can lift and carry less than 10 pounds, can sit less than six hours in an eight-hour day, and can stand or walk for less than two hours in a workday. In addition, Dr. Gould acknowledges that obesity and diabetes with sensory abnormalities limit the claimant's "positional sense and feeling."

(Tr. 18.) The ALJ also noted that Dr. Gould opined that Plaintiff had no active symptoms and was "doing fairly well." (Tr. 18–19.) It was this perceived inconsistency which led the ALJ to find Dr. Gould's opinion "not persuasive." (Tr. 21.) Similarly, the ALJ found "Dr. Pollack's

---

[2] The Commissioner correctly notes that the "treating physician rule" is no longer applicable to disability claims filed after March 27, 2017, such as this one, and thus the ALJ and the Commissioner have greater flexibility in weighing medical opinions on the record. (Defendant's Cross-Motion for Judgment on the Pleadings, Dkt. 16, at 22.) However, this increased flexibility in weighing the evidence does not relieve ALJs of their duty to develop the record. *See, e.g.*, *Alfonso v. Comm'r of Soc. Sec.*, No. 20-CV-3914 (LDH), 2022 WL 219575, at *7 (E.D.N.Y. Jan. 20, 2022).

consultative evaluation somewhat persuasive because while some exertional restrictions are consistent with the clinical observations from this single exam, the marked limitations proposed are not entirely consistent with the benign neurological findings at this time." (Tr. 21.)

Given his determination that neither Dr. Gould nor Dr. Pollack, the medical experts who had personally examined Plaintiff, had provided opinions supported by their own examination notes, the ALJ had a duty to further develop the record and reconcile these gaps. *Weiss v. Comm'r of Soc. Sec.*, No. 19-CV-5916 (MKB), 2021 WL 2010503, at *13 (E.D.N.Y. Mar. 23, 2021) ("Accordingly, if some of [psychologist's] treatment notes and opinions were inconsistent, the ALJ should have developed the record and sought clarification in view of the perceived inconsistencies."); *Samaru v. Comm'r of Soc. Sec.*, No. 18-CV-6321 (KAM) (LB), 2020 WL 3051576, at *13 (E.D.N.Y. June 8, 2020) ("[G]iven the ALJ's finding that [the plaintiff's treating physician's] opinion was internally inconsistent with his treatment notes and/or inconsistent with other evidence in the record, the ALJ should have explained his finding and re-contacted [the treating physician] to further develop or reconcile the record."); *Romero v. Colvin*, No. 11-CV-3920 (ENV), 2016 WL 74820, at *4 (E.D.N.Y. Jan. 6, 2016) ("[T]o the extent that the ALJ perceived internal inconsistencies in [the treating physician]'s opinion, he was obliged to recontact [the treating physician] and attempt to resolve them."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the [treating physician's] clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician]."); *cf. Micheli*, 501 Fed. App'x. at 29 (determining there was no duty to re-contact given that the opinions of other treating physicians supported the RFC).

### C. The ALJ Failed to Consider Parts of Plaintiff's Medical Records

The ALJ failed to develop the record by failing to consider and include records of Plaintiff's bariatric surgery. The ALJ's only mention of the bariatric surgery was that Plaintiff

9

"was considering additional bariatric surgery as of 2019." (Tr. 20.) However, records from Dr. DiGiovanna on October 18, 2019, describe the surgery as being planned for October 21, 2019—only three days later. (Tr. 379.) Furthermore, Dr. Gould's notes from August 28, 2020, state that Plaintiff "underwent bariatric surgery in Oct[ober] 2019." (Tr. 512.) Despite the multiple mentions in the record of the surgical procedure either being imminent or having taken place previously, the ALJ included no records from the procedure or postoperative examinations. Not only does this mean the record is incomplete, but the fact that the ALJ characterized the procedure as one Plaintiff "was considering" suggests the ALJ made his decision without knowledge of whether the procedure had actually taken place. (Tr. 20.) Failure to include records of a surgical procedure during the relevant time period is a failure to develop the record that merits remand. *Dillon v. Comm'r of Soc. Sec.*, No. 17-CV-4136 (PAE) (BCM), 2018 U.S. Dist. LEXIS 154897, at *49–50 (S.D.N.Y. Sept. 7, 2018) ("[W]hile an ALJ may rely on the claimant's counsel in the first instance to obtain missing treating records[,] . . . [he] must nevertheless take 'independent steps to complete the record' if necessary. Thus, courts in our Circuit have frequently found that an ALJ does not satisfy [his] duty to develop the record by relying on the claimant's attorney to obtain the missing records." (citing *Sotososa v. Colvin*, No. 15-CV-854 (FPG), 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016))).

## II. The ALJ's RFC Finding Is Not Supported by Substantial Evidence

### A. Duty to Base Opinion on Substantial Evidence

While the ALJ's failure to develop the record is sufficient to remand, the Court further finds that the ALJ's RFC finding is not supported by substantial evidence. *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)). In

10

determining whether the ALJ's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings. 20 C.F.R. § 404.1520(a)(3). Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417. However, the Court is mindful that "it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118. If there is substantial evidence in the record to support the Commissioner's findings as to any fact, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76.

      **B.**      **The ALJ Dismissed the Opinions of Examining Physicians in Favor of a Non-Examining Consultant**

As discussed above, the ALJ found Dr. Gould and Dr. Pollack's opinions "not persuasive" and "somewhat persuasive," respectively. (Tr. 21.) At the same time, the ALJ found Dr. Dhiman's opinion, which was based entirely on reviewing the medical records without examining Plaintiff, to be "most persuasive," because the ALJ found it "consistent with the clinical evidence of treating sources[,] and where [Dr. Dhiman's] opinion differ[ed] from the independent examiner's assessment, he offered a compelling explanation for the basis of his suppositions." (Tr. 21.) Thus, despite years of treatment and physical examinations Plaintiff had received from Dr. Gould, who treated Plaintiff over three years, and Dr. Pollack, who had examined Plaintiff six times over two years, the ALJ based his findings of Plaintiff's impairments exclusively on the opinion of a non-examining expert, Dr. Dhiman, who relied entirely on the written record of Plaintiff's medical history, including Dr. Pollack's notes.[3] (Tr. 328, 512, 524, 531, 536, 545.) "[A]n ALJ may not

---

[3] Prior to offering his opinion, Dr. Dhiman's only knowledge of Plaintiff in addition to the written record was a single question from Dr. Dhiman, posed through the ALJ, to the Plaintiff at the hearing: "Does the claimant use a handheld assistive device for ambulating?" Plaintiff responded in the negative. (Tr. 36.) This question and Plaintiff's response appeared to have no impact on Dr. Dhiman's opinion. (Tr. 41–42.)

11

cherry-pick medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not." *Jones v. Saul*, No. 19-CV-5542 (LGS) (BCM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020) (internal quotation marks omitted), *report and recommendation adopted*, 2020 WL 5775195 (S.D.N.Y. Sept. 28, 2020); *see also McGill v. Saul*, No. 18-CV-6430 (PKC), 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) (The ALJ accorded partial weight to Plaintiff's treating physicians' opinions because they "did not provide any basis or reasoning to support their respective opinions.  However, since the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions." (internal citation and quotation marks omitted)).

Additionally, the ALJ failed to support his findings with substantial evidence by relying primarily on Dr. Dhiman's opinion even though he did not have access to either the records of Plaintiff's bariatric surgical procedure or Dr. Gould's medical assessment of Plaintiff's physical capabilities, which directly contradicted Dr. Dhiman's conclusions. *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *17 (E.D.N.Y. Sept. 28, 2012) ("[T]he fact that the non-examining medical advisor did not have complete medical records of the claimant before him made the ALJ's improper reliance upon the advisor's testimony even more questionable." (citing *Hidalgo v. Bowen*, 822 F.2d 294, 298 (2d Cir. 1987))); *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (summary order) (remanding to district court with instructions to remand to the Commissioner where expert's incomplete access to records meant "[c]onsideration of [claimant]'s entire medical records might have altered [testifying expert]'s conclusions."); *Chambers v. Comm'r of Soc. Sec.*, No. 19-CV-2145 (RWL), 2020 WL 5628052, at *13 (S.D.N.Y. Sept. 21, 2020) (holding that "[the staleness of the consultative opinions also means that the ALJ

erred by giving great weight to Dr. Titanji's opinion when he had not reviewed an extensive and material portion of the medical record."); *Murphy v. Saul*, No. 17-CV-1757 (PKC), 2019 WL 4752343, at *6 (E.D.N.Y. Sept. 30, 2019) (holding that where testifying medical expert "did not review all relevant objective medical evidence because of the ALJ's failure to adequately develop the record[,] . . . the ALJ's reliance on consultative examiner opinions, over the opinions of Plaintiff's treating doctors, was error.").

### C.     The ALJ Improperly Substituted His Judgment for That of a Medical Expert

The ALJ noted in his decision that Dr. Dhiman did not have access to Dr. Gould's records in forming his opinion. The ALJ justified this fact as being immaterial based on his finding that Dr. Gould's opinion is "not persuasive." (Tr. 21.) This justification was in error for two reasons. First, as discussed above, in finding Dr. Gould's opinion to be internally inconsistent, the ALJ had a duty to attempt to resolve the inconsistency by re-contacting Dr. Gould. Second, in finding Dr. Gould's assessment to be "less persuasive," the ALJ substituted his own judgment for that of a medical expert. "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Here, the ALJ found that "Dr. Gould's assessment of a less than sedentary capacity . . . is less persuasive since it is inconsistent with the most recent normal stress test and the doctor's own treatment notes reporting the claimant to be doing fairly well with no difficulty standing or walking." (Tr. 21.) However, in arriving at this finding, the ALJ relied entirely on his own judgment of Dr. Gould's records and opinion. "While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Wikiert v. Comm'r of Soc. Sec.*, No. 17-CV-6799 (PKC), 2019 WL 959665, at *2 (E.D.N.Y. Feb. 26, 2019) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998))

13

(brackets omitted). In this instance, the ALJ was not assessing the credibility of Dr. Gould, but instead making an assessment of whether Dr. Gould's records sufficiently supported Dr. Gould's findings as to Plaintiff's physical capacity. *See Rosa*, 168 F.3d at 79 ("In *Balsamo*, we similarly found that an ALJ had improperly made a medical determination by concluding that an absence of atrophy of any muscle groups was inconsistent with a finding of disability." (internal quotation marks omitted)).

\* \* \* \*

In sum, because the opinions of Dr. Gould and Dr. Pollack did not support the ALJ's RFC, and Dr. Dhiman's opinion cannot be considered substantial evidence for the ALJ's RFC, there was no substantial evidence to support the RFC determination. *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at \*4 (E.D.N.Y. Aug. 3, 2021*)* ("[A]n ALJ's RFC determination must be supported by a medical opinion in the record at that time."); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343–44 (W.D.N.Y. 2015) ("[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." (internal quotations marks omitted)), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order); *Benitez v. Comm'r of Soc. Sec.*, No. 20-CV-5026 (RWL), 2021 WL 4239244, at \*15 (S.D.N.Y. Sept. 17, 2021) ("[W]here a consultative examiner did not review important medical records, the consultative examiner's opinion cannot constitute . . . substantial evidence to support an RFC."); *Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1360 (ER) (DF), 2021 WL 3774317, at \*20 (S.D.N.Y. Aug. 9, 2021) ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."), *report and recommendation adopted*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021).

### III. The ALJ's Insufficient Credibility Determination and Explanations

#### A. Duty to Evaluate Plaintiff's Testimony

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) (citations omitted). The ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citation omitted). Still, "[a] finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988) (citation omitted). "The failure to make credibility findings regarding the [claimant's] critical testimony [can] fatally undermine[] the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that [the] claimant is not under a disability." *Id.* (citation omitted). "Further, an ALJ's credibility determination . . . cannot be based on unsupported interpretations of raw medical evidence or mischaracterizations of the record." *Chiappa v. Comm'r of Soc. Sec.*, No. 18-CV-3508 (ER) (CM), 2019 WL 5722119, at *15 (S.D.N.Y. Aug. 16, 2019) (citation omitted).

"The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms." *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective

15

medical evidence and other evidence' of record." *Id.* (brackets omitted) (citing 20 C.F.R. § 404.1529(a)).

At the second step, the ALJ "must consider statements the claimant or others make about her impairment(s), her restrictions, her daily activities, her efforts at work, or any other relevant statements she makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings." *Villegas Andino v. Comm'r of Soc. Sec.*, No. 18-CV-1780 (PKC), 2019 WL 4575364, at *5 (E.D.N.Y. Sept. 19, 2019) (quoting *Genier*, 606 F.3d at 49). "The issue is . . . whether [P]laintiff's statements about the intensity, persistence, or functionally limiting effects of her pain are consistent with the objective medical and other evidence." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) (citations omitted). However, "a claimant need not be [unable to care for oneself] to be found disabled." *Balsamo*, 142 F.3d at 81.

### B. The ALJ Failed to Develop the Record and Make a Credibility Determination

The ALJ did not perform the two-step analysis and instead found Plaintiff's lack of treatment from a podiatrist, Plaintiff's denial of "requiring acute care of any diabetes-related symptoms," and lack of use of any assistive device for ambulation, as being indicative of conservative treatment. (Tr. 22.) The ALJ also observed that despite alleging severe physical impairments, Plaintiff "told two independent examiners that she had no difficulty carrying out hygiene and personal care activities independently." (Tr. 22.) The ALJ further noted Plaintiff's ability to "prepare her own quick meals, help with laundry on occasion, do some light cleaning, and drive." (Tr. 22.)

At the hearing, the ALJ did not attempt to further develop the extent to which Plaintiff was able to perform these activities. In particular, despite finding that Plaintiff's "statements

16

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" (Tr. 22), the ALJ did not ask any questions of Plaintiff during the hearing (besides relaying the question from Dr. Dhiman (Tr. 36))—even though Plaintiff was on the call and available to speak and elaborate on her capabilities.[4]  The ALJ's failure to further examine Plaintiff's difficulty performing these tasks calls any credibility determination into question.  *Hankerson v. Harris*, 636 F.2d 893, 895–96 (2d Cir. 1980) ("[I]t was particularly important that the ALJ explore[] these symptoms with plaintiff so that the ALJ could effectively exercise his discretion to evaluate the credibility of the claimant to arrive at an independent judgment . . . regarding the true extent of the pain alleged." (internal quotation marks, brackets, and ellipsis omitted)).

Thus, on remand, the ALJ should "include a specific credibility determination, explain how []he balanced the various factors, [including Plaintiff's daily activities], and identify any inconsistencies between the plaintiff's testimony and the rest of the record."  *Hodge*, 2020 WL 7262846, at *4; *see also Calo v. Comm'r of Soc. Sec.*, No. 20-CV-3559 (AMD), 2021 WL 3617478, at *4–5 (E.D.N.Y. Aug. 16, 2021); *Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y. 2017); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment and close this case.

---

[4] Plaintiff did testify when her own attorney asked questions, but the testimony mirrored information already in the record. (Tr. 41–42.)

                                                          SO ORDERED.

                                                          */s/ Pamela K. Chen*
                                                          Pamela K. Chen
                                                          United States District Judge

Dated: September 23, 2022
        Brooklyn, New York